UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YANHONG CHEN and LUTONG YANG,
on behalf of themselves
and others similarly situated,

      Plaintiffs,

v.                       Case No. 8:22-cv-2774-VMC-MRM

WOW RESTAURANT TH, LLC
and TRINH HUYNH,

      Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiffs Yanhong Chen and Lutong Yang's Motion for Conditional Certification Pursuant to Fair Labor Standards Act (Doc. # 56), filed on April 19, 2023. Defendants Wow Restaurant TH, LLC and Trinh Huynh responded in opposition on April 29, 2023. (Doc. # 63). For the reasons that follow, the Motion is granted.

## I.  **Background**

Plaintiffs initiated this Fair Labor Standards Act ("FLSA"), Florida Minimum Wage Act ("FMWA"), and breach of contract action against their former employers, Wow Restaurant TH, LLC and Huynh, on December 6, 2022. (Doc. # 3). They filed the amended complaint, asserting — among other

1

things — FLSA claims for failure to pay minimum wages and failure to pay overtime wages on behalf of themselves and a collective of other employees of Defendants, on January 16, 2023. (Doc. # 23).

Wow Restaurant TH, LLC ("the LLC") owns and operates a restaurant called Yaki Sushi Grill BBQ in Bradenton, Florida. (Id. at 2-4). Trinh Huynh is a member of the LLC and "the day-to-day, on-site, hands-on manager of Yaki Sushi Grill BBQ." (Id. at 5).

During her employment between August 2020 and April 2022, Chen worked a variety of positions at Yaki Sushi Grill BBQ. She was hired by Huynh as a waitress in August 2020. (Id. at 6). Over the years, Chen's positions varied, with her also working to purchase ingredients for the restaurant, and as a kitchen helper, hostess, and cashier. (Id. at 6-9). Chen regularly worked 97.25 hours per week but was never paid the minimum wage or paid the overtime rate. (Id.). Worse yet, Plaintiffs allege that, "beginning in January 2021, Chen was frequently not paid her promised base salaries" and, in fact, Defendants only paid her between $6,000 to $10,000 total from January 2021 through the end of her employment on April 30, 2022. (Id.).

Yang began working at Yaki Sushi Grill BBQ in July 2019 and continued working there until April 30, 2022. (Id. at 9-12). He "was hired to work as a sushi chef (a non-tipped position where he did not earn tips), and to help with renovation until the restaurant opened." (Id. at 10). Between July 2019 and January 2020, Yang regularly worked 77 hours per week. (Id. at 10). From February 2020 through April 2022, he regularly worked 97.25 hours per week. (Id. at 11). Although Yang was promised a base salary of $5,000 per month, "Yang was never paid his promised base salary." (Id.).

Both Chen and Yang lived in lodging provided by Defendants. (Id. at 6). "Throughout her employment, the cost to Defendants of lodging Chen amounted to two hundred fifty dollars ($250.00) per month. Throughout her employment, Chen shared a room with Yang, and that room cost Defendants five hundred dollars ($500.00) per month to rent." (Id. at 7).

Defendants allegedly "did not keep any records of Chen's [or Yang's] working time" and "did not post a notice of employees' rights under the federal and state wage-and-hour laws on the premises of Yaki Sushi Grill BBQ." (Id. at 9).

The amended complaint defines the FLSA collective as follows: "Plaintiffs bring this action individually and on behalf of all other current and former non-exempt workers

employed by Defendants at Yaki Sushi Grill BBQ over the three years preceding the filing of this Complaint, through entry of judgment in this case." (Doc. # 23 at 12). During the relevant time, Defendants allegedly "employed about eleven (11) employees, including Plaintiffs, at any one time: about four (4) kitchen workers — including but not limited to 'oil woks,' hibachi chefs, and miscellaneous helpers — as well as about three (3) sushi chefs, about three (3) servers, and about one (1) hostess/cashier." (Id. at 5). In the context of the class allegations related to the FMWA claim, the amended complaint alleges that "[a]ll the Class members were subject to the same policy and practice of denying minimum wages, and overtime." (Id. at 13).

Thus far, only one other Yaki Sushi employee — Xin Qiang — has signed a notice of consent to join the collective action. (Doc. # 59).

Now, Plaintiffs seek conditional certification of the FLSA collective and permission to send notice to potential opt-ins to the collective. (Doc. # 56). In support of their Motion, Plaintiffs attach the affidavits of Chen and Yang. (Id. at 91-111). Therein, they list multiple other employees, though they only know the names of some, who served various roles including server, hibachi chef, hibachi/tempura chef,

4

sushi chef, and dishwasher. (Id.). Chen and Yang aver that
they knew the pay rate or salary of these employees because
"all the employees at the restaurant would often address the
pay rates of each other" and would disclose their pay rates
or salaries. (Id.). These employees all regularly worked over
70 hours per week. (Id.). Yet, according to Chen and Yang,
neither they nor any of their coworkers "were ever paid
overtime pay for any overtime work performed." (Id.).
Plaintiffs aver that Defendants "exploited [them] and [their]
coworkers by paying below [] legal wages using [their]
immigrant status to prevent [them] from speaking up." (Id. at
110).

Defendants have responded to the Motion (Doc. # 63), and
the Motion is ripe for review.

## II. **Legal Standard**

The FLSA expressly permits collective actions against
employers accused of violating the FLSA's mandatory overtime
provisions. See 29 U.S.C. § 216(b) ("An action . . . may be
maintained against any employer . . . by any one or more
employees for and in behalf of himself or themselves and other
employees similarly situated."). In making collective action
certification determinations under the FLSA, courts typically
follow a two-tiered approach:

> The first determination is made at the so-called
> notice stage. At the notice stage, the district
> court makes a decision - usually based only on the
> pleadings and any affidavits which have been
> submitted - whether notice of the action should be
> given to potential class members.
>
> Because the court has minimal evidence, this
> determination is made using a fairly lenient
> standard, and typically results in conditional
> certification of a representative class. If the
> district court conditionally certifies the class,
> putative class members are given notice and the
> opportunity to opt in. The action proceeds as a
> representative action throughout discovery.
>
> The second determination is typically precipitated
> by a motion for decertification by the defendant
> usually filed after discovery is largely complete
> and the matter is ready for trial. At this stage,
> the court has much more information on which to
> base its decision, and makes a factual
> determination on the similarly situated question.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th

Cir. 2001) (internal citations and quotation marks omitted).

To maintain a collective action under the FLSA,

plaintiffs must demonstrate that they are similarly situated.

Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258

(11th Cir. 2008). Similarly situated employees must

affirmatively opt-in to the litigation by giving their

consent in writing and filing their consent in the court in

which such action is brought. 29 U.S.C. § 216(b).

At the notice stage, the Court should initially

determine whether there are other employees who desire to

opt-in to the action and whether the employees who desire to opt in are similarly situated. Morgan, 551 F.3d at 1259; Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." Hipp, 252 F.3d at 1218. Plaintiffs bear the burden of showing a reasonable basis for the claim that there are other similarly situated employees and must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Morgan, 551 F.3d at 1261 (internal citations omitted).

III. **Analysis**

    A.   **Whether other employees desire to opt-in**

    First, the Court must "satisfy itself that there are other employees . . . who desire to 'opt-in.'" Dybach, 942 F.2d at 1567-68. The onus is on the Plaintiffs to demonstrate a reasonable basis for the assertion that other employees desire to opt-in. Leo v. Sarasota Cnty. Sch. Bd., No. 8:16-cv-3190-JSM-TGW, 2017 WL 477721, at *2 (M.D. Fla. Feb. 6, 2017). "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated

employees." Hart v. JPMorgan Chase Bank, N.A., No. 8:12-cv-470-JDW-TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012).

Here, Plaintiffs met their light burden to establish a reasonable basis that other employees desire to opt-in to this action. One other employee, Xin Qiang, who worked as a server at Yaki Sushi Grill BBQ, has filed a notice of consent to join the collective. (Doc. # 59). This Court is mindful that "there is no magic number requirement for the notice stage," and that courts will conditionally certify FLSA collectives even with relatively few plaintiffs present at this stage of the litigation. Ciani v. Talk of the Town Rests., Inc., No. 8:14-cv-2197-VMC-AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015). Indeed, collectives have been conditionally certified on the basis of a single opt-in notice. See Brooks v. A. Rainaldi Plumbing, Inc., No. 6:06-cv-631-GAP-DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006) (noting that even one opt-in notice can be sufficient to meet the first requirement for conditional certification); Guerra v. Big Johnson Concrete Pumping, Inc., No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) ("Here, the Affidavit of Mr. Vidales shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiff's contention beyond one of pure speculation.").

Furthermore, because Plaintiffs have alleged that Yaki Sushi Grill BBQ typically employed only eleven employees in various roles at the same time, the fact that only one other employee has opted-in at this early stage of the litigation does not suggest that there is little interest in the litigation from potential collective members.

Considering the circumstances present in this case, Plaintiffs have established a reasonable basis that there are other workers from the restaurant who would desire to opt-in.

### B.    <u>Whether the employees are similarly situated</u>

Again, a plaintiff's burden of showing a "reasonable basis" for the claim that similarly situated employees seek to join the action is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." <u>Morgan</u>, 551 F.3d at 1260-61 (internal citations omitted). Nonetheless, there must be more than "only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs" would come forward. <u>Id.</u> at 1261.

For purposes of defining the "similarly situated class" under Section 216(b), plaintiffs must show that the employees

are similarly situated with respect to their job requirements and pay provisions. Id. at 1259 (citing Dybach, 942 F.2d at 1567-68). In determining whether the putative plaintiffs are similarly situated, the court considers, among other factors:

> 1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographic location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; [and] 5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

Franco v. Bank of Am. Corp., 691 F. Supp. 2d 1324, 1326 (M.D. Fla. 2010).

Here, Plaintiffs' affidavits and allegations in the amended complaint suffice to show that all non-exempt non-managerial employees at Yaki Sushi Grill BBQ were similarly situated. In their affidavits, Chen and Yang aver that they and their coworkers, who held various positions, all experienced the denial of overtime pay. See Yi Mei Ke v. JR Sushi 2 Inc., No. 19CV7332PAEBCM, 2021 WL 148751, at *7 (S.D.N.Y. Jan. 15, 2021) ("To the extent the proposed collective consists of all non-managerial, non-exempt employees at JR Sushi, plaintiff's affidavit satisfies the modest showing that is required of [plaintiffs] at this

preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." (citation and internal quotation marks omitted)), <u>aff'd sub nom. Ke v. JR Sushi 2 Inc.</u>, No. 19CIV7332PAEBCM, 2021 WL 465359 (S.D.N.Y. Feb. 9, 2021); <u>Qian Xiong Lin v. DJ's Int'l Buffet Inc.</u>, No. CV 17-4994 (JS)(AYS), 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019) (conditionally certifying collective "consist[ing] of those current and former non-exempt, non-managerial employees, both tipped and non-tipped, employed by Defendant DJ's International Buffet, Inc. from August 24, 2014 to date, who were not paid minimum wage or overtime compensation for hours worked in excess of forty per week"). Notably, both Chen and Yang held various different positions themselves, but were denied minimum and overtime wages in all the positions they held.

They also explain that they were aware of the pay rates other employees received because they had "befriended" some coworkers and "all employees at the restaurant would often address the pay rates" and disclose their pay rates during these conversations. (Doc. # 56 at 95-97); <u>see also Yi Mei Ke</u>, 2021 WL 148751, at *7 ("[P]laintiff has submitted a sworn

affidavit, asserting that she personally spoke with certain employees at JR Sushi about their compensation, overheard conversations about her coworkers' compensation, and/or witnessed the 'boss' hand-writing their pay slips. As a result, plaintiff learned that a number of employees at JR Sushi other than herself – including kitchen staff, sushi chefs, waitresses, packers, and delivery persons – worked more than 40 hours per week and were compensated by means of a flat monthly wage arrangement that violated the minimum wage and overtime provisions of the FLSA."). Lending more credibility to their assertions, Chen and Yang give the names or nicknames of certain coworkers, the pay rates those coworkers received, and the general time when the conversations about pay rates occurred. (Doc. # 56 at 96-109). Notably, all potential collective members worked at the same location, had the same manager (Huynh), and worked during a relatively short three-year period.

Thus, the Court determines that these employees, although they held various job titles, were similarly situated. The Court conditionally certifies a collective of all non-exempt, non-managerial employees who worked for Defendants at Yaki Sushi Grill BBQ and who were not paid

minimum wage or overtime compensation for hours worked in excess of forty per week.

Because Plaintiffs plausibly allege that the FLSA violations were willful (Doc. # 23 at 16, 18), the collective will cover a three-year period. See Abdul-Rasheed v. KableLink Commc'ns, LLC, No. 8:13-cv-879-SCB-MAP, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013) ("Plaintiff has alleged in his complaint that Defendants willfully violated the FLSA. At this early stage of the proceedings, the Court concludes that Plaintiff's allegation is sufficient to support his request for a three-year period in the Court-authorized Notice."). "[B]ecause the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that individual opts into the action, notice is generally directed to those employed within three years of the date of the mailing of the notice." Bittencourt v. Ferrara Bakery & Cafe Inc., 310 F.R.D. 106, 116 (S.D.N.Y. 2015); Rojas v. Garda CL Se., Inc., 297 F.R.D. 669, 679 (S.D. Fla. 2013) (noting that "the limitations period for opt-ins runs from the time of the filing of their written consents, and not from the time that they receive notice"), order vacated in part on reconsideration on other grounds, No. 13-23173-CIV, 2014 WL 11906592 (S.D. Fla. Apr. 11, 2014).

However, for the sake of simplicity, "Plaintiffs shall amend their Notice and Consent Form to limit the statute-of-limitations period to the date three years prior to the date of this Order." Rojas, 297 F.R.D. at 679.

C.   **Proposed Notice**

Plaintiffs have submitted a proposed notice to potential opt-ins, which covers the three years before this case was filed. (Doc. # 56 at Ex. 3 at 69). Among other things, Plaintiffs also ask that Defendants be required to turn over the last-known contact information of all current and former potential collective members within fourteen days. (Id. at 10-11). In their response, Defendants do not raise any objections or arguments concerning the proposed notice or request for contact information. (Doc. # 63).

Court-authorized notice in a class action context helps to prevent "misleading communications" and ensures that the notice is "timely, accurate, and informative." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 171 (1989). "[T]he notice to the class should not appear to be weighted in favor of one side or the other." Palma v. MetroPCS Wireless, Inc., No. 8:13-cv-698-VMC-MAP, 2014 WL 235478, at *1 (M.D. Fla. Jan. 22, 2014). "[I]n exercising the discretionary authority to oversee the notice-giving process, courts must be

14

scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffmann–La Roche, 493 U.S. at 174.

Upon review of the proposed notice, the Court considers the notice generally appropriate in substance, except the use of "December 7, 2019" as the beginning of the opt-in period and the other issues noted later in this Order. The Court agrees that the notice may be sent in English, Chinese, Spanish, or in a bilingual format, to enable potential opt-ins to understand the notice. See Collado v. J. & G. Transp., Inc., No. 14-80467-CIV, 2014 WL 5390569, at *5 (S.D. Fla. Oct. 23, 2014) (permitting plaintiffs to "provide bilingual Notice–and–Consent Forms in English and Spanish" and noting that "[o]ther courts in similar circumstances have permitted this initial notice to be in both English and Spanish"). The Court also agrees that a ninety-day opt-in period is appropriate. See Harris v. Performance Transp., LLC, No. 8:14-cv-2913-SDM-EAJ, 2015 WL 1257404, at *6 (M.D. Fla. Mar. 18, 2015) (granting a 90-day opt-in period where "Defendant did not object to this period" and noting "courts routinely grant ninety-day opt-in periods"). Furthermore, the Court sees no reason to include defense counsel's contact

15

information on the notice, as defense counsel plays no role in the actual distribution of notice or collection of consents. See Cryer v. Intersolutions, Inc., No. CIV.A. 06-2032 (EGS), 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007) ("The Court also sees no reason to include defense counsel on the class notice. Defense counsel does not play a role in managing the distribution of the notice or the gathering of consent forms. Including additional lawyers only creates the potential for confusion of those who receive the notice."); Rosell v. VMSB, LLC, No. 20-20857-CIV, 2020 WL 7767879, at *4 (S.D. Fla. July 7, 2020) ("[T]he notice should not contain the defendant counsel's information because it would serve little purpose. . . . In fact, the inclusion of the information can even have a chilling effect of future participation by either confusing possible opt in plaintiffs or by inadvertently intimidating them from participating.").

However, all Plaintiffs' other requests regarding the notice and its dissemination are denied, which may necessitate Plaintiffs' making certain revisions to their proposed notice to comply with this Order. Specifically, the Court will only authorize the dissemination of notice by U.S. mail and email. See Wright v. Waste Pro USA, Inc., No. 0:19-CV-62051-KMM, 2020 WL 8641581, at *7 (S.D. Fla. Dec. 22, 2020)

16

("[T]he Court will permit Plaintiff to send notice via first-class mail and e-mail, but not via text message since Plaintiff has not 'demonstrate[d] a need to transmit the notice via text message in addition to notice via first class mail and email.'" (citation omitted)). The Court will not authorize Plaintiffs to utilize QR codes on the notice, as there is no reason to believe potential opt-ins cannot mail or email their consents to join. See Hong v. Haiku @ WP Inc., 582 F. Supp. 3d 117, 135 (S.D.N.Y. 2022) ("[T]he Court does not grant Plaintiff's requests to add QR codes, to use Defendants' logo, to post the notice on Plaintiff's counsel's website, or to distribute the notice through Defendants' pay envelopes. The Court is unpersuaded that such means are necessary, and shares many of the concerns expressed by other courts in the Second Circuit in response to such requests."). The Court will not authorize Plaintiffs to utilize Defendants' logo on the notice, unless Defendants consent to such usage in writing.

Nor will the Court allow the creation of a webpage on Plaintiffs' counsel's website to publish the notice or for electronic submission of consents. See Qian Xiong Lin, 2019 WL 5842798, at *5 (stating that disseminating notice by "[p]osting on social media and websites would be overbroad

and not likely to materially improve the chances of notice"
(citation and internal quotation marks omitted)). Likewise,
the Court does not permit the sending of "reminder notices"
to potential collective members. See Palma, 2014 WL 235478,
at *3 ("[T]he Court determines that it is not necessary to
send any class members 'reminder post cards.' Sending a
putative class member notice of this action is informative;
sending them a 'reminder' is redundant.").

Next, Plaintiffs' "reservation of the right" to require
Defendants to publish the notice in Chinese and English
language newspapers if Plaintiffs consider Defendants'
provision of contact information insufficient or if many
notices are returned undeliverable is denied. Plaintiffs
provide no authority in support of this request, and this
measure is unnecessary. See Qian Xiong Lin, 2019 WL 5842798,
at *6 ("Plaintiffs request that if Defendants fail to provide
them with a complete list of current and former employees for
the relevant time period, and their contact information, or
if more than twenty percent of the mailings are returned as
undeliverable, Plaintiffs should be permitted to post an
abbreviated form of notice on social media or in newspapers
at Defendants' expense. Plaintiffs provide no basis in law
for this request and the Court finds none applicable.

18

Moreover, the Court finds Plaintiffs' request patently unreasonable. As such the request is denied.").

The Court also will not order that notice be posted at Yaki Sushi Grill BBQ at this time, nor included in employees' pay envelopes. But Plaintiffs may move for permission to post the notice in the restaurant if Defendants fail to properly turn over the names and contact information of potential collective members. See Ciani v. Talk of The Town Restaurants, Inc., No. 8:14-cv-2197-VMC-AEP, 2015 WL 226013, at *6 (M.D. Fla. Jan. 16, 2015) ("The Court notes that other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process.").

Furthermore, the Court will not equitably toll the statute of limitations until the end of the opt-in period because Plaintiffs have failed to show that any extraordinary circumstances exist that warrant such tolling. See Pendlebury v. Starbucks Coffee Co., No. 04-80521-CIV, 2008 WL 700174, at *5 (S.D. Fla. Mar. 13, 2008) ("Because Congress made clear that an opt-in plaintiff should not escape the statute of limitations on his cause of action by tolling the limitations period to the filing of the original complaint, and because Plaintiffs have not cited any extraordinary circumstances

that prevented the opt-in Plaintiffs in this case from asserting their FLSA rights during the limitations period, the Court declines to equitably toll the statute of limitations period for this case."); Longcrier v. HL-A Co., 595 F. Supp. 2d 1218, 1244 (S.D. Ala. 2008) (denying motion to equitably toll the limitations period for potential opt-ins because "[t]o hold otherwise would be to opine that equitable tolling should be granted in every § 216(b) case as a matter of course during the pendency of a conditional class certification request, thereby transforming this extraordinary remedy into a routine, automatic one"). There has been no undue delay in this case, and, in fact, the Court has ruled on this Motion in less than two months after it was filed — a fact that further weighs against equitable tolling.

The Court directs Defendants to turn over within fourteen days from the date of this Order the names, dates of employment, and positions of all non-exempt, non-managerial employees who worked for Defendants at Yaki Sushi Grill BBQ from three years before the date of this Order to the present day. By that same date, Defendants shall also turn over the last-known contact information for these potential collective members, including their mailing addresses, telephone numbers, email addresses, and WhatsApp or WeChat usernames.

As to Plaintiffs' other requests regarding discovery (Doc. # 56 at 23), the Court has already entered a Case Management and Scheduling Order permitting discovery and setting a discovery deadline. (Doc. # 46). No further order from this Court permitting discovery is necessary.

Finally, Plaintiffs' discussion of a potential future amendment of the amended complaint to assert individual FMWA claims by former employees who may opt-in to the FLSA collective is both muddled and premature. (Doc. # 56 at 24). Only one person has opted-in thus far and nothing in Plaintiffs' Motion shows that that person has a FMWA claim or wishes to assert such claim individually in this case. Furthermore, Plaintiffs have already pled a FMWA claim on behalf of a putative class of former employees (Doc. # 23 at 12, 16), and thus Plaintiffs may seek certification of such class. If Plaintiffs still wish to amend, they should file a proper motion to amend and attach a copy of the proposed second amended complaint.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs Yanhong Chen and Lutong Yang's Motion for Conditional Certification Pursuant to Fair Labor Standards Act (Doc. # 56) is **GRANTED.**

21

(2)   Defendants Wow Restaurant TH, LLC and Trinh Huynh shall
      produce to Plaintiffs within fourteen days from the date
      of this Order a complete list of all non-exempt, non-
      managerial employees who worked for Defendants at Yaki
      Sushi Grill BBQ from three years before the date of this
      Order to the present. The list shall include the last-
      known contact information for these individuals, as
      specified in this Order.

(3)   The Court approves dissemination of class notice, to be
      amended by Plaintiffs to be consistent with the terms of
      this Order, via U.S. mail and via email.

(4)   Plaintiffs shall allow each individual up to ninety days
      from the date of mailing in which to return an opt-in
      consent form to Plaintiffs' counsel.

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this
13th day of June, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE