```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION
```

YANHONG CHEN,
LUTONG YANG, and
XIN QIANG,

      Plaintiffs,

v.                                Case No. 8:22-cv-2774-VMC-NHA

WOW RESTAURANT TH, LLC
and TRINH HUYNH,

      Defendants.
_____/

## ORDER

This matter comes before the Court upon consideration of Defendants Wow Restaurant TH, LLC and Trinh Huynh's Second Motion for Summary Judgment (Doc. # 121), filed on November 13, 2023. Plaintiffs Yanhong Chen, Lutong Yang, and Xin Qiang responded on December 11, 2023. (Doc. # 130). Defendants replied on December 23, 2023. (Doc. # 90). For the reasons that follow, the Motion is denied.

**I.   Background**

Plaintiffs Chen and Yang initiated this Fair Labor Standards Act ("FLSA"), Florida Minimum Wage Act ("FMWA"), and breach of contract action against their former employers, Wow Restaurant TH, LLC and Huynh, on December 6, 2022. (Doc. # 3). They filed the amended complaint on January 16, 2023,

1

asserting FLSA claims for failure to pay minimum wages and failure to pay overtime wages on behalf of themselves and a collective of other employees of Defendants, and Florida law claims for failure to pay minimum wages and breach of contract. (Doc. # 23). Plaintiff Qiang filed a notice of consent to join as to the FLSA claims on April 27, 2023. (Doc. # 59). The parties proceeded through discovery.

The evidence reveals the following. All three Plaintiffs were employees at Defendants' restaurant, Yaki Sushi Grill BBQ, in Bradenton, Florida. (Doc. # 51-11 at ¶ 3; Doc. # 51-12 at ¶ 3; Doc. # 130-1 at ¶ 3; Doc. # 130-2 at 19:4-18). Plaintiffs worked in various roles: Yang worked on renovation of the restaurant and was later a sushi chef; Chen worked as a waitress, hostess, cashier, and kitchen helper; and Qiang was a waitress. (Doc. # 51-11 at ¶¶ 3-6; Doc. # 51-12 at ¶ 3; Doc. # 130-1 at ¶ 3).

As discussed in greater depth later, the parties disagree fiercely over whether Defendants paid Plaintiffs the minimum wage for their regular work hours and whether Defendants paid them the overtime rate for any overtime hours worked. Defendants rely on the testimony of Huynh and the time and pay records Defendants have maintained. See, e.g.,

(Doc. # 54-1; Doc. # 77; Doc. # 130-2; Doc. # 121-1; Doc. # 121-2; Doc. # 121-15; Doc. # 121-16).

For their part, Plaintiffs present their sworn statements (in the form of affidavits and a declaration) to support that they were not properly paid either the minimum wage for their regular hours or the overtime rate for the overtime they worked. (Doc. # 51-11 at ¶¶ 7-15; Doc. # 51-12 at ¶¶ 6-10, 13; Doc. # 130-1 at ¶¶ 4, 6-9).

Defendants now move for summary judgment on all counts of the amended complaint. (Doc. # 121). Plaintiffs have responded (Doc. # 130), and Defendants have replied. (Doc. # 134). The Motion is ripe for review.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex Corp., 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder

4

evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### III. Analysis

Summary judgment is denied as to all claims asserted by each of the three Plaintiffs.

Regarding the FLSA overtime claim, Plaintiffs "must demonstrate that (1) [they] [] worked overtime without compensation and (2) [Defendants] knew or should have known of the overtime work." Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314-15 (11th Cir. 2007). Plaintiffs "bear[] the burden of proving [their] claim that [they] performed unpaid overtime work." Straley v. Ferrellgas, Inc., No. 8:08-cv-2460-RAL-MAP, 2009 WL 10670500, at *2 (M.D. Fla. Sept. 16, 2009). As for the FLSA and FMWA minimum wage claims, Plaintiffs must prove "that [they] [were] employed by an employer covered by the FLSA during the time period involved;

5

that [P]laintiff[s] [were] engaged in commerce . . . or employed by an enterprise engaged in commerce . . .; and that the employer failed to pay [P]laintiff[s] the minimum wage [] required by law." Kwasnik v. Charlee Fam. Care Servs. of Cent. Fla., Inc., No. 6:08-cv-926—GAP-KRS, 2009 WL 1607809, at *4 (M.D. Fla. June 9, 2009).

"Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation [or was not paid the minimum wage], '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'" Allen, 495 F.3d at 1315 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." Id. "The employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and '[e]mployees seldom keep such records themselves.'" Id. (quoting Anderson, 328 U.S. at 687).

"Where the employer has records of time, the employee must come forward with sufficient evidence to call such records into question." Id. "This is especially true where the employer has kept records that reflect overtime hours."

6

Id. Nevertheless, the payment of some overtime hours does not preclude a plaintiff from succeeding on his claim. See Watts v. Silverton Mortg. Specialists, Inc., 378 F. Supp. 3d 1164, 1175 (N.D. Ga. 2019) ("However, the fact that on some occasions Plaintiff reported (or was allowed to report) overtime, and was paid for it, does not defeat her claim that there were other hours that she worked that she was not allowed to report and was not paid for.").

"Summary judgment is warranted in situations where defendants provide detailed time records indicating the times that employees arrive and leave." Hernandez v. Quality Constr. Performance, Inc., No. 1:13-CV-23267-UU, 2014 WL 12531531, at *3 (S.D. Fla. May 6, 2014). "Summary judgment should be denied where the employer's time records reflect the total daily hours worked each day without indicating a specific work schedule or whether there were any breaks in the day." Id. The Eleventh Circuit has explained that "in situations where the employer's records cannot be trusted and the employee lacks documentation, . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent

7

of that work as a matter of just and reasonable inference." Allen, 495 F.3d at 1316 (11th Cir. 2007) (citation omitted).

Here, Defendants rely on their internal time records for Plaintiffs, which note when Plaintiffs supposedly arrived and left work each day, in arguing that summary judgment is warranted on all the overtime and minimum wage claims.[1] (Doc. # 121-1; Doc. # 121-2; Doc. # 121-15; Doc. # 121-16). According to Defendants, these records prove that Defendants paid all Plaintiffs at least the minimum wage for all regular hours worked and the proper overtime wage for all overtime hours worked. (Doc. # 121 at 9-16).

But Plaintiffs have presented evidence to call the accuracy of these records into question. As an initial matter, although Defendants maintain they paid Plaintiffs properly, Defendants admit that they misstated both Yang and Chen's incomes on their 2020 W-2 forms. (Doc. # 130-2 at 129:11-

---

[1] In their reply, Defendants also raise a new argument as to Yang's FLSA claims: Yang, as a "very professional" sushi chef, is exempt from the FLSA because he is "a learned professional." (Doc. # 134 at 2, 6). However, "a party may not wait until a reply brief to raise an argument for the first time." Ganz v. Grifols Therapeutics LLC, No. 21-82072-CIV, 2023 WL 5437356, at *11 (S.D. Fla. Aug. 22, 2023). Thus, the Court will not consider this argument at this time. See Boring v. Pattillo Indus. Real Est., 426 F. Supp. 3d 1341, 1349 (N.D. Ga. 2019) ("[T]he Court will not consider new arguments made for the first time in the reply brief.").

8

132:14; Doc. # 77 at 2). Specifically, supposedly at Yang's request, Defendants reported Yang's $20,000 income on Chen's W-2 in addition to the $10,998 Chen actually earned. (Doc. # 130-2 at 129:11-132:14; Doc. # 77 at 2).

Also, as Plaintiffs point out (Doc. # 123 at 21), there are some internal inconsistencies in Defendants' records. For example, on February 16, 17, 23, and 24, 2022, Qiang is recorded as having worked from 11:00 AM through 3:00 PM and then from 5:00 PM through 10:00 PM — a total of nine hours. (Doc. # 121-16 at 3). But the "total hours" column records Qiang as only having worked eight hours. (Id.). The testimony of Huynh also suggests that the pay records are inaccurate in at least one respect. Again, the time records reflect that Plaintiffs clocked out for a multi-hour lunch break in the middle of the afternoon each day (roughly from 2:00 or 3:00 PM to 5:00 PM). (Id. at 2-5). But Huynh testified that the restaurant was still open between 2:00 and 5:00 PM and, if a customer came in during that time, the employees would be on call to attend the customers. (Doc. # 130-2 at 111:23-112:23). These issues alone raise doubts about the accuracy of the time and pay records maintained by Defendants.

Furthermore, the affidavits of Chen and Yang and the declaration of Qiang conflict with the time and pay records.

9

Chen's affidavit, Yang's affidavit, and Qiang's declaration all provide different start and end work dates than those recorded in Defendants' records. (Doc. # 51-12 at ¶¶ 3, 5; Doc. # 51-11 at ¶ 3; Doc. # 130-1 at ¶ 3). Likewise, Plaintiffs' sworn statements also conflict with Defendants' records regarding their regular hours, how many days a week they usually worked, and whether Plaintiffs actually received a mid-day lunch break. (Doc. # 51-12 at ¶¶ 5, 11-12; Doc. # 51-11 at ¶¶ 4-6, 13-14; Doc. # 130-1 at ¶¶ 4-8); see also Brown v. Gulf Coast Jewish Fam. Servs., Inc., No. 8:10-cv-1749-JDW-AEP, 2011 WL 3957771, at *6 (M.D. Fla. Aug. 9, 2011) (denying summary judgment where another former employee provided an affidavit, stating that "Defendant's supervisors directed her and others to record a lunch break regardless of whether a lunch break was taken or not"), report and recommendation adopted, No. 8:10-cv-1749-JDW-AEP, 2011 WL 4005928 (M.D. Fla. Sept. 8, 2011).

Yang further averred that he was promised a salary of $5,000 a month and $250 a month in lodging but was never paid the $5,000 a month salary. (Doc. # 51-12 at ¶¶ 6-10). He also averred that at no point did Defendants pay the promised salary or pay him at the time-and-a-half rate for overtime hours. (Id. at ¶¶ 10, 13, 16). Because of the failure to pay

10

him beyond the $250 a month in lodging, Yang swore that he was not paid the minimum wage for his hours worked. (Id. at ¶¶ 9-10).

Chen similarly averred that, although she was promised a base salary of $2,000 per month in 2021 and $3,000 per month in late 2021 through 2022, she "was frequently not paid [her] promised base salaries." (Doc. # 51-11 at ¶¶ 7-12). "Over the whole course of [Chen's] employment, Defendants only paid [her] a total of between six thousand dollars ($6,000.00) and ten thousand dollars ($10,000.00) . . . in salary payments," which amounts to less than the minimum wage for the regular hours worked. (Id. at ¶¶ 10-11). She also avers she was never paid for overtime hours worked. (Id. at ¶¶ 12, 15).

And Qiang swore that she "was not paid an hourly wage, at a rate of $6.98 per hour or otherwise," as Defendants' records suggest. (Doc. # 130-1 at ¶ 8). Rather, according to her, Qiang was paid a flat daily salary of $20 per day (during her first month of employment) and then $30 per day (during the rest of her employment). (Id. at ¶¶ 6-7). This flat salary did not compensate Qiang for "any particular number of hours per week, and did not compensate [her] at time-and-a-half a regular hourly rate for overtime hours." (Id. at ¶ 9). Qiang averred that she worked an average of sixty-three hours per

11

week: "three (3) days per week from about 10:00 AM through about 10:00 PM; and two (2) days per week from about 10:00 AM through about 11:30 PM." (Id. at ¶ 4).

Qiang also averred that Defendants never explained "the concept of a 'tip credit'" to her, under which her "flat daily salaries amounted to less than the minimum wage, and that the difference between [her] flat daily salaries and the minimum wage was intended to be made up for by customer tips." (Id. at ¶ 10). Nor did Defendants explain to Qiang "the provisions of Section 203(m) of the" FLSA. (Id. at ¶ 11). Thus, Qiang neither understood nor agreed "to have a 'tip credit' taken against [her] wage." (Id. at ¶ 12). As a result, there is a genuine dispute as to whether Plaintiffs had notice of the tip credit and, thus, whether the tip credit method can be applied in this case. See Griffith v. Landry's, Inc., No. 8:14-cv-3213-MSS-JSS, 2015 WL 13802788, at *3 (M.D. Fla. Dec. 9, 2015) ("In order for an employer to qualify for a 'tip credit' under 29 U.S.C. § 203(m), the employer must establish that (1) the tip credit is claimed for qualified tipped employees; (2) *the employees received proper notice of § 203(m)*; and (3) all tips received by the employees were retained by them . . . ." (emphasis added)); Saldana v. Bird Rd. Car Wash, Inc., No. 15-CV-23329, 2016 WL 5661632, at *3

12

(S.D. Fla. Sept. 30, 2016) ("To give sufficient notice of section 203(m), an employer must inform its employees *either verbally or in writing* of its intention to apply the tip credit to satisfy the minimum wage obligations." (citation and internal quotation marks omitted)).

Defendants spend much of their reply attempting to undermine the credibility of Plaintiffs by pointing to inconsistencies or issues with their testimony. (Doc. # 134 at 1-4, 6). While the Court understands Defendants' arguments, such credibility determinations are the province of the jury. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

The Court is also mindful that "[i]n this circuit, in an FLSA action, an employee need not support their testimony with time records or other documentation." Long v. Alorica, Inc., No. CIV.A. 11-00476-KD-C, 2012 WL 4820493, at *6 (S.D. Ala. Oct. 10, 2012). While Plaintiffs lack documentation to support the number of hours they actually worked or the actual hourly pay they received, they can rely on their own testimony

13

and their average work schedule to establish the number of hours worked and the rate of pay received. See Hernandez, 2014 WL 12531531, at *3 ("As Plaintiff has discredited the accuracy of Defendants' time records, Plaintiff's affidavit that his average schedule was from 7 A.M. to 7 P.M. each day, Monday through Friday, with one Saturday each month, is sufficient to deny Defendants' Motion."); Brown, 2011 WL 3957771, at *7 ("Although Plaintiff largely submits her own testimony to demonstrate the amount and extent of unpaid work, the Court is satisfied that Plaintiff has produced a just and reasonable inference as to the amount of unpaid work, and that 'any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider.'" (citation omitted)). Taking as true Plaintiffs' version of events, a reasonable jury could find that Defendants' violations of the law were knowing and willful.

Likewise, there is a genuine dispute of material fact over whether Defendants breached their employment contracts with Chen and Yang by failing to properly pay them. Again, while Defendants claim that Chen and Yang were properly paid, Chen and Yang have presented sworn statements that they were

not paid the wages they were promised. (Doc. # 51-11 at ¶¶ 7-12; Doc. # 51-12 at ¶¶ 6-8, 10).

In short, there are genuine issues of material fact regarding, among other things, whether Defendants paid Plaintiffs for all overtime hours worked, whether Defendants paid Plaintiffs the minimum wage, and whether Defendants breached the contracts with Chen and Yang. Thus, the Motion is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Wow Restaurant TH, LLC and Trinh Huynh's Second Motion for Summary Judgment (Doc. # 121) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of January, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE